[ALBANY GENERAL TERM, December 1, 1862. *Hogeboom, Peckham* and *Miller*, Justices.]

---

## HULBERT and others *vs.* CARVER and others.

Where the plaintiffs deposited money with the defendants, who were bankers at Chicago. taking from them a certificate stating that the plaintiffs had deposited in their office "$1781.42 Ill. cy," payable to the order of themselves, on the return of the certificate; *Held* that the plaintiffs, if not entitled to specie, were at least entitled to payment in Illinois currency receivable in the ordinary transactions of business, at par; and that they were not obliged to take Illinois bills which were uncurrent, and not received or passed as ordinary currency, in the state, or capable of being used except at a depreciation of fifty cents on the dollar.

THE plaintiffs, composing the firm of H. C. & M. Hulbert, doing business in the city of New York, on the 29th day of March, 1861, at the city of Chicago, in the state of Illinois, deposited with the defendants, who were doing business as bankers at Chicago, under the firm name of B. F. Carver & Co., bank bills issued by duly incorporated banks of Illinois, known as Illinois currency, or the abbreviations "Ill. cy.," amounting to $1871.42, and which, at the time of such deposit, were used in commercial transactions generally in the state of Illinois at their nominal or par value.

The defendants thereupon made and delivered to the plaintiffs the following certificate of deposit :

" No. 464.          B. F. CARVER & Co. Bankers,
                    *Chicago, March* 29, 1861.

H. C. & M. Hulbert have deposited in this office seventeen hundred eighty-one $\frac{42}{100}$ dollars, Ill. cy., payable to the order of themselves on return of this certificate.

$1781.42.                    B. F. CARVER & Co."

On the 11th day of June, 1861, said certificate was presented for payment at the banking house of the defendants in Chicago, and payment demanded, which was refused, except that the defendants offered to pay sixty cents in gold, or in depreciated Illinois bills which were uncurrent, and which could not be used at their nominal value in ordinary business transactions in the state. The average depreciation being from 40 to 50 per cent, which the plaintiffs refused to receive. And this action was commenced to recover the sum so deposited, with interest from the date of demand. The case was tried before Mr. Justice HOGEBOOM, and a judgment for the plaintiffs entered October 15th, 1861, from which the defendants appealed to the general term of this court. The general term reversed the judgment and ordered a new trial. (*See* 37 *Barb.* 62.)

The cause was tried a second time, at the New York circuit, in June, 1862, before Justice MARVIN, without a jury. The following facts were found by the justice.

*First.* That at the several times mentioned in the com-plaint, the plaintiffs were copartners, doing business in the city of New York, under the firm name of B. C. & M. Hul-bert. *Second.* That at the said several times the defendants were copartners, doing business as bankers in the city of Chi-cago, state of Illinois, under the firm name of B. F. Carver & Co. *Third.* That on the 29th of March, 1861, the plain-tiffs deposited with the defendants $1781.42, in Illinois cur-rency, or bank bills issued by duly incorporated banks of Illinois, which, at the time of such deposit, were used in commercial transactions generally, in the state, at their nom-inal or par· value. *Fourth.* That simultaneously with the deposit aforesaid, the defendants made the certificate of de-posit, a copy of which is set forth in the complaint, and de-livered it to the plaintiffs. *Fifth.* That on the 11th day of June, 1861, the said certificate was duly presented for pay-ment at the banking house of the defendants in Chicago aforesaid, and payment thereof demanded, which was refused except as hereinafter stated. *Sixth.* That the defendants were ready and willing, and offered to pay to the holders of said certificate depreciated Illinois bills of the nominal or par value of $1781.42, but which, at the time, were uncurrent, and would not be received or passed as ordinary currency in the state in the ordinary transactions of business, nor could it be so used except at a depreciation on the average of about 50 per cent of its nominal value, which the plaintiffs refused to receive. *Seventh.* That the bills issued by incorporated banks of Illinois were, at the time of such deposit, and for a long time prior thereto had been, known by the words " Illi-nois currency," or their abbreviations, " Ill. cy." *Eighth.* That between the 29th day of March and the 11th day of June, 1861, Illinois currency became greatly depreciated in value, so that, with the exception of two or three banks, the same could not be used in the ordinary business transactions in the state of Illinois at the nominal par value, but could only be used at their depreciated value of about 50 or 60

cents to the dollar.   That any bills of Illinois banks not de-
preciated more than five per cent, would, on that day, have
been received in payment as ordinary currency in the state,
in the ordinary transactions of business, at par.

The justice arrived at the following conclusions of law :
*First.* That the instrument upon which this action is brought
is a good and valid promise, binding the defendants to pay to
the order of the plaintiffs $1781.42 in Illinois currency.
*Second.* That the defendants having refused to pay $1781.42
in Illinois currency, the plaintiffs are entitled to recover from
the defendants in this action the said sum less five per cent,
with interest from June 11th, 1861.   For which amount
judgment was entered with costs, and the defendants appealed.

*Benj. T. Kissam,* for the appellants.   I. The contract on
which this action is brought, created an obligation on the
part of the defendants to pay to the holders $1781.42, in Illi-
nois currency, of the same kind and character as that which
was deposited.   In *Thompson* v. *Sloan,* (23 *Wend.* 71,) ac-
tion on a note payable in Canada money, Mr. Justice Cowen
says : " On the note in question, Canada money, a specific
article, would be *lawful tender."*   In *Jones* v. *Failes,* (4 *Mass.
Rep.* 245,) action on a note for $680, foreign bills, Parsons,
Ch. J. says : " A contract to pay money and a contract to
pay money's worth in bills, appear to me to be essentially
different ; and if we were to render judgment on this verdict,
it could not be pleaded in bar to an action * * * * on it as a
contract to pay money in foreign bills."   In *Smith* v. *Dun-
lap,* (12 *Ill. Rep.* 184,) action on a note of the defendant for
payment of $131,480.50, in " *State of Illinois indebtedness,"*
Ch. J. Treat (*p.* 190) says : " Where the promissor agrees to
pay a certain sum in *bank notes* or *other evidences of indebt-
edness,* which purport on their face to represent dollars, and
be *counted* as such, the sum is expressed to indicate the num-
ber of dollars of *the notes or evidences to be paid,* and *not
the amount of the debt or consideration.*   The *obligation is*

*in fact but a promise to deliver* so many dollars, *numerically,* of *the securities described."* In *McCormick* v. *Trotter,* (10 *Serg. & Rawle,* 94,) action on a note payable in bank notes of the chartered banks in Pennsylvania, Duncan, J. (*p.* 96) said: " It *was not a promise to pay money,* either in legal contemplation or the contemplation of the parties when they contracted. It is an *unanswerable objection* to the action, that the defendant might, according to this contract, *have tendered the* $500 *in the notes of any chartered bank, however depreciated the paper might be."*

II. The contract only entitled the holders to demand payment in " Illinois currency of the same kind and character as that which was deposited." There is no evidence of any such demand, and no such fact found by the court below. Smith swears " that he simply demanded payment of the certificate." The defendants did not refuse payment; they offered payment in gold or in current bills. In *Vance* v. *Bloomer,* (20 *Wend.* 197,) action on a due-bill, payable in ready made clothing, Cowen, J. says: " A special demand and refusal to perform were necessary;" again, (*p.* 200,) "It is no answer to say that a demand was made *importing* that the plaintiff wanted his pay upon the note;" and again, " He [the defendant] was not bound to offer, but only to comply with a *proper demand."* (*See also Buck* v. *Burk,* 18 *N. Y. Rep.* 337, 340, 346; *Lutweller* v. *Linnell,* 12 *Barb.* 512, 515; *Downs* v. *The Phœnix Bank,* 6. *Hill,* 297.) The demand made by Smith was not considered a legal demand, and it was *waived* by Bradner, Smith & Co. the holders of the certificate. (*Buck* v. *Burk,* 18 *N. Y. Rep.* 341.) Bradner, Smith & Co. then requested a notary public to make a *special demand.* He demanded payment *in Illinois or other currency that would pass at par at Chicago, which was refused.*

III. When the special demand was made by the notary the defendants offered to pay the holders $1781 in Illinois currency that would not pass at par at Chicago, which was

refused.  The defendants are not in default.  (*Battle* v. *Rochester City Bank*, 3 *Comst.* 88.  *Moore* v. *Hudson River R. R. Co.*, 12 *Barb.* 156.)

IV.  The action cannot be sustained in its present form, under any aspect.  The demand made was for *cash;* and such is the action.  The contract does not entitle the plaintiffs to cash, but only to *bank bills* of *Illinois banks*—a currency unknown to the laws of the state of New York, and the court below so held.  The certificate should not have been received as evidence of a *cash* indebtedness, and the defendants' exception was well taken.  (*Code*, § 162.  *Prindle* v. *Caruthers*, 15 *N. Y. Rep.* 429.  *Seacord* v. *Burling*, 5 *Denio*, 444.  *Jones* v. *Failes*, 4 *Mass.* 234.  *Thompson* v. *Sloan*, 23 *Wend.* 71, 73.)  And the complaint should have been dismissed, for the reasons stated upon the several motions therefor.  (1.) Because the defendants did not promise to pay money.  (1 *R. S.* 768, *marg. p.* §§ 1, 4.  *Leiber* v. *Goodrich*, 5 *Cowen*, 186.  *Cook* v. *Satterlee*, 6 *id.* 108.  *Thompson* v. *Sloan*, 23 *Wend.* 71, 73.  *Battle* v. *Rochester City Bank*, 3 *Comst.* 91, 92.)  (2.) Because the plaintiffs did not show any transfer of the certificate to them from Bradner, Smith & Co.  (3.) Because the certificate is embraced by the terms of the restraining act of 1830, which prohibits the giving, paying, receiving or circulating of any evidence of debt, issued by any banking company, payable otherwise than in lawful money of the U. S.  (*See* 1 *R. S.* 711, &c.)  Certificates of deposit are evidences of debt.  (*Banking Laws of N. Y. p.* 26.)

V.  The 5th finding of fact by the court below is not sustained by the evidence, which is that, on the 11th June, 1861, the demand was for $1781.42 in Illinois or other currency that would pass at par in Chicago, which was refused.  All that part of the 6th finding after $1781.42 is not sustained by the evidence, which is that the defendants were willing and offered to pay to the holders of the contract $1781.42 in depreciated Illinois currency, which would not pass at par at Chicago.  All that part of the 8th finding, af-

Hulbert *v.* Carver.

ter the words "*nominal par value*," is not sustained by evidence of any kind.

VI. The facts found by the court below do not justify the judgment, and the conclusions of law drawn from the facts are erroneous. (*Smith* v. *Devlin*, 23 *N. Y. Rep.* 365.)

*A. B. Capwell*, for the respondents. I. The instrument set forth in the complaint is in fact and in law a promissory note for the payment of money only; and as such was properly received in evidence. 1. The supreme court of the state of Illinois have expressly held that certificates of deposit, similar to the one in this case in all material respects, are promissory notes. (*Bank of Peru* v. *Farnsworth*, 18 *Ill. R.* 553. *Laughlin* v. *Marshall*, 19 *id.* 390.) 2. Certificates of deposit, payable at a future day, have been repeatedly held to be promissory notes within the restraining and prohibitory acts of this state. (*Bank of Orleans* v. *Merrill*, 2 *Hill*, 295. *Leavitt* v. *Palmer*, 3 *Coms.* 19. *Tracy* v. *Talmage*, 4 *Kern.* 178.) 3. Similar instruments have been held to be promissory notes, in other states and courts. (*Miller* v. *Austen*, 13 *How. U. S.* 218; *S. C.* 5 *McLean*, 153. *Cary* v. *McDougald*, 7 *Georgia Rep.* 84.) 4. The fact that it is payable in Illinois currency, if proved, will not change the nature of the instrument. In the cases of Bank of Peru *v.* Farnsworth, and Laughlin *v.* Marshall, the certificates were for "currency" received, and were made payable "in like funds" and "in currency." Yet the court held both to be "promissory notes for the payment of money." (*See also Judah* v. *Harris*, 19 *John.* 144, *and cases cited.*)

II. The defendants' motion to dismiss the complaint on the ground of variance was properly denied. The plaintiffs' title is not specifically denied in the answer. Their possession is therefore *prima facie* evidence of ownership, and their production of the same on the trial entitled them to recover upon it. (*Farmers and Mech. Bank of Genesee* v. *Wadsworth*, 24 *N. Y. Rep.* 547.)

III. On the trial, the court admitted evidence of a custom at Chicago, as to the meaning and application of the abbreviations "Ill. cy.," and held as a conclusion therefrom that this certificate was payable in "Illinois currency," or in the words of the custom proved, "Illinois currency of the same kind and character as that which was deposited." 1. In the third finding of facts, the court has found specifically that the kind and character of the deposit was "currency or bills used in commercial transactions generally in the state at their nominal or par value." 2. It is clear from the evidence, and the court so found in the 8th finding of facts, that there were two or three banks whose bills would have answered to the kind and character required for payment on the day of the demand. 3. The defendants were not ready or willing to make such payment, but offered 60 cents gold, or bills which the court has found "were uncurrent and would not be received or passed as ordinary currency in the ordinary transactions of business." Nor could they be used at all, except at a depreciation, on the average, of about 50 per cent of their nominal value. This was properly refused by the plaintiffs. 4. The defendants having thus refused to pay in Illinois currency, there is no error in the conclusion that the plaintiffs are entitled to recover the amount of the certificate and interest. 5. Indeed the only error appears to be in the finding and decision, deducting five per cent from the amount of the draft, but this is in the defendants' favor. It was doubtless to reduce the plaintiffs' money to a gold basis. If the defendants could be compelled to pay in gold, instead of in "greenbacks," worth from 60 to 70 per cent in gold, the plaintiffs would have no ground for complaint.

*By the Court,* CLERKE, J. When this case was before the general term, on a former occasion, the Justice who delivered the opinion of the court observed that "it would hardly be consistent with a fair interpretation of this contract that the defendants might receive bills on banks, on deposit, at the

time worth quite or nearly par, and after using the same, be allowed to repay the amount in the same kind of money, even if it had become, since the deposit, worthless."

At the trial, evidence of a custom at Chicago was received tending to show that when deposits were made in the manner specified in this contract, repayment should be made in notes of the same character ; that is, in notes of Illinois banks, but current for the ordinary transactions of business, in the state of Illinois, at their nominal or par value. It was also proved that any bills of Illinois banks not depreciated more than five per cent would, on the 11th of June, 1862, when the certificate was presented for payment, at the banking house of the defendants, have been received in payment as ordinary currency in the state, in the ordinary transactions of business, at par.

On the first perusal of the certificate in question I was inclined to the opinion that the defendants were liable to pay in specie ; the description of the paper specified in the certificate appearing to me to relate only to the bills received, and not to the manner in which repayment should be made. Certainly it would be a hard construction of the contract to infer from it that the parties intended, although the bills were current at the time they were received, that the defendants, after using them, should be allowed to repay the amount in the same kind of money after it had become depreciated. This would be a fair construction, if the deposit was a special one merely for safe keeping, when the same identical bills should be returned ; but where, as in the usual dealings between banks and their depositors, the former use the money of the latter, nothing would be more unjust than that the banks, after applying the money when it was current, to their own business purposes, should be allowed, after it became uncurrent and depreciated, to apply bills of the same kind which they may have on hand, or which they may pick up among the brokers, to the repayment of the amount deposited.

Barker *v.* Cook.

If the plaintiffs are not entitled to specie, they were at least entitled to payment in Illinois currency receivable in the ordinary transactions of business at par.

The judgment should be affirmed, with costs.

[New York General Term, May 4, 1863. *Sutherland, Clerke* and *Mullin,* Justices.]

---

Barker and others *vs.* Cook.

It is erroneous to vacate an order of arrest, merely because the copy affidavit served contains no signatures of the affiant or of the officer before whom the affidavit was sworn to.

If no copy, or paper purporting to be a copy, of the affidavit is served by the sheriff, on arresting the defendant, the omission is an irregularity only, and will not entitle the defendant to his discharge.

The provision of the code requiring the sheriff to deliver a copy of the order and affidavit to the defendant, on arresting him, is merely directory.

If an order to show cause why an order of arrest should not be vacated, on the ground of irregularity, does not point out the irrregularity, the order cannot be vacated for that reason.

AN order of arrest was granted in this case, on an affidavit stating that the defendant had disposed of his property with the intent to defraud his creditors. The affidavit, duly signed and sworn to, was filed with the clerk at the time the order of arrest was granted. Subsequently the defendant, on an order to show cause not specifying the ground of objection, and without any affidavit, moved, on a general notice, to vacate the order. On the hearing of the motion, he insisted that the arrest was void, because the copy affidavit served on him did not contain the signatures of the affiant, to the affidavit, or of the officer to the jurat. The court, at special term, vacated the order of arrest, and discharged the defendant, although the objection was raised, by the plantiffs, that the irregularity was not specified in the moving papers. The plaintiffs appealed.